Myra Helmer Pritchard, Appellee, v. Roland E. Wilcox et al., Defendants, Citizens State Bank of Park Ridge, Appellant.

Gen. No. 41,937.

Heard in the second division of this court for the first district at the October term, 1941. Opinion filed March 24, 1942.

HENRY L. BLIM and LEONARD A. SCHOLL, both of Chicago, for appellant.

CONCANNON, DILLON, SNOOK & ARTHUR, of Chicago, for appellee; NORBERT B. TYRRELL, of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiff, Myra Helmer Pritchard, filed a creditor's complaint for discovery of assets under section 49 of the Chancery Act, in which she named as defendants, Roland E. Wilcox, the judgment debtor, Citizens State Bank of Park Ridge and others. The trial court entered a money decree for $1,600 against the Citizens State Bank of Park Ridge, from which decree said bank prosecutes this appeal.

Plaintiff's complaint alleged that March 26, 1935, she recovered a judgment for $5,592.70 against Roland E. Wilcox in the superior court of Cook county; and that April 8, 1935, a writ of *fieri facias* was issued pursuant to said judgment and was returned *nulla bona* by the sheriff on August 3, 1935. The complaint contained the usual allegations in general terms as to possible holdings by the various defendants of assets belonging to the judgment debtor. It then averred that Roland E. Wilcox was the owner of shares of stock in the Citizens State Bank of Park Ridge; and that said bank had in its possession or in its control divers goods, wares and merchandise and other articles of personal property that belonged to defendant Roland E. Wilcox.

The complaint specifically prayed that the bank "state whether said defendant Roland E. Wilcox now owns any of the shares of stock in said corporation . . . and whether he has at any time since August 26, 1931, owned any of said shares of stock, which have been subsequently transferred on the stock record books of said corporation." The complaint included a prayer that the defendant Roland E. Wilcox be enjoined, among other things, from selling or transferring any of his assets and that a receiver be appointed for his property.

The answer of the principal defendant, Roland E. Wilcox, admitted that he owned ten shares of stock of the Citizens State Bank of Park Ridge and further admitted that such stock was in the possession of said bank.

The Citizens State Bank of Park Ridge admitted by its answer that the judgment debtor, Roland E. Wilcox, was the owner of record of 10 shares of the capital stock of the bank; that the certificate for said 10 shares of stock belonging to Wilcox was on deposit with and held by the bank; and that Roland E. Wilcox was president of the defendant bank.

As has been shown the defendant bank admitted in its answer of October 14, 1935, that it had in its possession 10 shares of its capital stock which were the property of the judgment debtor, Roland E. Wilcox. Plaintiff served notice that on September 17, 1937, she would make application for the appointment of a receiver and for an order directing the bank to turn over the stock belonging to Wilcox to said receiver. It then appeared for the first time that the bank had on April 10, 1936, about seven months after it had filed its answer, delivered to Wilcox, the judgment debtor, the 10 shares of bank stock which it had in its possession belonging to him. On the same day that the bank delivered the stock to Wilcox, he sold and transferred same to his son for $1,250. The bank made the transfer on its books, canceled the old certificate and issued a new certificate to the transferee. August 7, 1936, about four months later, Wilcox's son sold the stock to one Paul Ludmann for $1,600.

The defendant bank's principal contention is that even though it admitted by its answer that it had in its possession the ten shares of bank stock belonging to the judgment debtor, it had the right to turn such stock over to said judgment debtor and thus place it out of the reach of the court because plaintiff had not acted promptly to sequester the discovered asset by having an injunction issue restraining Wilcox from transferring the stock or restraining the bank from making a transfer of the stock on its books or by having a receiver appointed and the bank directed to turn over the certificate of stock to him.

Plaintiff's theory as stated in her brief is "that where, in a creditor's suit, service of process is had upon a defendant who is possessed of assets belonging to the judgment debtor, the lien thereby acquired on such assets and the jurisdiction of the court over same cannot be defeated and destroyed with impunity by the voluntary action of such a defendant who turns

the property over to the judgment debtor, whereby it is put out of reach; that in such case, equity having once acquired jurisdiction over the subject matter and of the parties, the court may properly enter a money judgment against such defendant for the value of the property, without relegating the plaintiff to any other remedy which may be available.''

Section 49 of the Chancery Act (par. 49, ch. 22, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 106.12]) provides in part as follows:

''Whenever an execution shall have been issued against the property of a defendant, on a judgment at law or in equity, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a complaint against such defendant, and any other person, to compel the discovery of any property or thing in action, belonging to the defendant, and of any property, money or thing in action due to him, or held in trust for him, and to prevent the transfer of any such property, money or thing in action, or the payment or the delivery thereof to the defendant, . . . . The court shall have power to compel such discovery, and to prevent such transfer, payment or delivery, and to decree satisfaction of the sum remaining due on such judgments, out of any personal property, money or thing in action, belonging to the defendant . . . which shall be discovered by the proceedings in chancery, whether the same were originally liable to be taken in execution at law or not . . . .''

It will be noted that under the foregoing statute the court was granted the power to compel the discovery of assets belonging to a judgment debtor, the power to prevent the transfer of the discovered assets to such judgment debtor and the power ''to decree satisfaction of the sum remaining due on such judgments, out of any personal property . . . belonging to the defendant, . . . which shall be discovered by

the proceedings in chancery, whether the same were originally liable to be taken in execution at law or not.''

The bank's claimed right to thwart the application of the discovered asset of the judgment debtor to the satisfaction of plaintiff's judgment is based entirely upon the failure of the court to exercise the second of the aforementioned powers. In other words it is claimed that because plaintiff did not promptly apply to the court for the issuance of an injunction or for the appointment of a receiver to prevent the transfer or delivery of the ten shares of stock by the bank to defendant and because the court did not promptly exercise its power ''to prevent such transfer . . . or delivery,'' the bank had a right to deliver the certificate of stock to the judgment debtor, who was its president, thereby depriving plaintiff of her right to have the stock applied toward the satisfaction of her judgment.

While ordinarily plaintiffs do act promptly to sequester ''discovered'' assets and while the plaintiff herein might have resorted to the interlocutory remedies of injunction or receivership to prevent the transfer and delivery of the certificate of stock by the bank to Wilcox, in our opinion she was under no obligation to do so. As soon as the judgment debtor's ownership of the bank's stock was discovered by the admission in the defendant bank's answer, such stock was brought within the control of the court, and the court having jurisdiction of the parties and the subject matter, it remained within the control of the court until a final decree was entered in the cause. If the bank had the right to deliver the certificate of stock to the judgment debtor seven months after it filed its answer admitting its possession of same, it would have had just as much right to deliver said certificate to him the day it was served with summons. To give such a construction to section 49 of the Chancery Act would render said section nugatory unless immediate steps were taken to

prevent the transfer or delivery of the judgment debtor's assets to him after same had been discovered. That section was enacted to aid judgment creditors and not to enable judgment debtors and those acting in concert with them to evade such judgment debtors' obligations. If defendants in discovery proceedings were permitted to do what the defendant bank has done here, it would defeat the entire purpose of the aforesaid section 49. We do not think that it was contemplated by the legislature that the mere failure of the court to exercise one of the powers conferred upon it by section 49 precluded the chancellor from exercising the other powers conferred by said section. The delivery of the ten shares of bank stock to the judgment debtor was at the bank's peril, after its admission by its answer that it had same in its possession. The retention of this stock by the bank until the final order of the court with regard to it imposed no undue hardship upon said bank and if for any reason the bank desired any directions respecting the stock the court was at all times available.

The defendant bank claims that in any event the court erred in entering a money decree against it. There is no merit in this contention. Where, as here, plaintiff was deprived of the equitable relief sought by reason of the voluntary act of the bank in delivering the stock to the judgment debtor, we think the principle is clearly applicable that whenever a court of equity has once acquired jurisdiction of a cause, it will retain such jurisdiction in order to do full justice between the parties. The situation presented here is analogous to that presented in a suit for specific performance, where at the commencement of the suit the remedy was possible but pending the action the defendant vendor puts it out of his own power to perform his agreement and renders the specific relief impossible by conveying the subject matter to another bona fide grantee for value.

The rule applicable under such circumstances is stated as follows in Pomeroy's Equity Jurisprudence, 3d Ed., sec. 237, at page 342: "If a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief, such, for example, as the specific performance of a contract, or the rescission or cancellation of some instrument, and it appears from facts disclosed on the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible of damages, the court then may, and generally, will instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved and decree the payment of mere compensatory damages." The instant case fully satisfies the general principle of equity above stated and plaintiff was clearly entitled to have her damages assessed herein instead of being relegated to another forum for relief.

Defendant bank contends that plaintiff's damages were not properly assessed. There was no evidence as to the market value of the stock at any time. The only evidence in the record bearing upon the value of the ten shares of bank stock in question is that on April 10, 1936, when the bank delivered the certificate of stock to the judgment debtor, the latter sold and transferred the stock to his son for $1,250; and that August 7, 1936, the son sold same to one Paul Ludmann for $1,600. As heretofore shown the damages were assessed and judgment entered against the defendant bank for the latter amount. We are constrained to hold that plaintiff's damages should have been assessed at $1,250, the amount for which the stock was sold on the day the defendant bank delivered same to the judgment debtor.

We have considered all the other points urged and

the authorities cited in support of same, but in the view we take of this case we deem further discussion unnecessary.

For the reasons stated herein the decree of the superior court is in all respects affirmed except as to the amount of recovery adjudged to plaintiff from the defendant bank, the money decree for $1,600 against the defendant bank is reversed and the cause is remanded with directions that the amount of damages awarded plaintiff and the amount of the judgment against the defendant bank be reduced from $1,600 to $1,250.

*Affirmed in part, reversed in part and remanded with directions.*

SCANLAN, P. J., and FRIEND, J., concur.